McBride, judge,
delivered the opinion of the court.
At the March term, 1848, of the criminal court of St. Louis county, the grand jury found an indictment against Elisha Baldwin, for murder in the first degree, perpetrated upon the person of his brother-in-law, Victor Mathews, late of the State of Arkansas.
The defendant being in custody, was put upon his trial at the July term of said court, when, conceding the killing of the deceased, the defendant relied upon the plea of insanity, at the time of committing the act charged against him.
The jury found the defendant guilty : whereupon he moved the court *225 to grant him a new trial, alleging several reasons therefor, which the court refused, when he excepted to the opinion of the court and prayed an appeal to this court, which was granted.
In the empamieling of the jury a question was raised as to the competency of a juror, and the judge of the criminal court having decided the juror competent, the defendant took an exception to the opinion of that court, and relies upon the point in this court, as error. The juror having been Sworn to answer questions, stated that he saw statements in regard to the transaction in the New Orleans public papers; that from these he formed an opinion, and believes that if the statements Were true, he has an opinion as to the defendant’s guilt or innocence; but he had then no prejudice or bias, nor has he now any against the defendant. That opinion is now unchanged if the facts are as stated; he should be governed Solely by the evidence; he has not conversed with any of the witnesses; his opinion depends solely upon what he saw in the New Orleans papers; he has Conversed on the subject with persons since his return to St, Louis, but does not know whether or hot they are witnesses.
Before the enactment of the provision hereafter referred to, great difficulty existed in obtaining a jury to try a criminal cause, Which, hy reason of the circumstances attending the commission of the act charged, gave to it general notoriety. Inquisitiveness is a component part of every rational thinking mind; when, therefore, an offence of a high grade, or one of unusual occurrence, or one attended with aggravating circumstances, takes place, it is but natural that it should become a subject of conversation and inquiry with the Community in which it occurred. This produces impressions rather than opinions of the guilt or innocence of the party accused, and hence the difficulty, in Some cases, of obtaining a jury, from the vicinage, free from impressions, amounted almost to an indemnity for crime. Having witnessed this state of things, and doubtless being desirous to obviate the difficulty as far as practicable, the general assembly of this State passed the following act:
££ It shall be good cause of challenge to a juror that he has formed or delivered an opinion On the issue or any material fact to be tried; but if it appear that such opinion is founded only on rumor, and not such as to prejudice or bias the mind of the juror, he may be sworn.” R.C» p. 880, sec. 12.
The information upon which the juror predicated his opinion, Was derived from newspaper statements, which, of all other sources of intelli *226 gence, are the most uncertain and unreliable ; gleaned, as such matters are, from the streets and alleys, beer houses and oyster cellars of a large commercial city, and without any special pains being taken to ascertain the particulars of the affair. The juror further stated that he had no prejudice or bias on his mind. If, therefore, the question 'of competency is referable to the juror himself, then he was competent; but it was npt his province to pass upon that question; he could -only state facts, and it was the duty of the court to decide whether, according to the facts, he was competent. In deciding this question, the presiding judge at the trial, having the juror before him, witnessing the manner of his examination, possessing 'a knowledge of his character is infinitely better qualified than we are to decide whether under all the circumstances, his mind and feelings are in a condition which will 'enable him to discharge honestly and impartially his duty as a juror. Where the juror qualifies himself under the statute, and the presiding judge accepts him, this court cannot say that an error has been committed.
When the evidence closed, the defendant’s counsel asked the court to instruct the jury as follows :
1. ' That if the jury believe from the evidence that the defendant was of unsound mind previous to the time at which the offence charged in the indictment was committed, and that derangement or unsoundness of mind was such as to leave him without sufficient reason, judgment and will to enable him to distingush between what was right and what was wrong, with regard to the particular act in question, (the killing of Mathews for violence used upon his, defendant’s sister) and unless he knew that the act was a crime against God and nature, they must find him not guilty.
2. If the jury believe from the evidence that the prisoner acted under a false and insane, but sincere belief that the deceased had threatened to kill his sister, and intended to kill his sister, and that from this cause, he, under an uncontrollable impulse killed Mathews, they should find him not guilty.
3. If the facts are such as to satisfy the jury that the prisoner had been laboring under a delusion or particular insanity, or if from his acts and conduct testified to by witnesses, they believe him insane, or resting under a fixed delusion, upon the particular act in question for some time previous to the killing of Mathews, the presumption of law is, that he was so insane when the act was done.
[, 4. If at the time the prisoner fired the pistol at Mathews, he was not *227 conscious of doing wrong and had not self control to prevent him from doing the act, they should acquit the prisoner.
5. As- to the question of insanity or unsoundness of mind, the true point for the jury is not whether-the prisoner was capable of distinguishing between right and wrong generally, but whether he knew in the particular case, with reference to the act in question that he was committing an offence against the laws of God and nature.
6. That if the evidence in- the cause is such as to satisfy the jury that the prisoner was- insane or of unsound mind previous to his going to Arkansas', and previous to the- killing of Mathews, they must acquit him, unless they believe from the evidence, that the prisoner had recovered his reason and was of sound mind at the time the offence charged was committed.
7. That if the preponderance of evidence was in favor- of his insanity or unsoundness of mine—if its bearing as a whole inclined that way, they should find him not guilty.
8. That as it is difficult to draw the line of demarkation- and say, where soundness of mind ends and insanity begins, the jury should be governed by facts and circumstances showing the condition of the prisoner’s. mind, and if from those facts as stated in evidence the jury believe that the prisoner rested under a delusion that Mathews had attempted to kill his sister and did intend to kill her, and that from that delusion he was left without sufficient reason, judgment and will, to know that the offence was a crime against God and nature, they should acquit.
9. That although facts may have been proved which in the absence of insanity or unsoundness of mind, or the- proof of it, might go to show malice in the prisoner, yet if the killing was done while insane, or resting under a delusion that was fixed in his mind, which left him without the use of his reason, judgment and xoill, at the time of the killing, the malice is not presumed, but the existence of it rebutted, and the jury should acquit.
10. That every other question is merged in the question whether or not the prisoner was insane at the time of the killing, and the only question for them to determine is, was he insane or of unsound mind with reference to the partierdar act in question, and at the time the of-fence is charged to have been committed, if so, he should be acquitted.
11. In order to constitute a crime, a man must have intelligence and capacity enough to have a criminal intent and purpose, and if his rea *228 son and mental powers are either so deficient that he has n,o. will, no conscience, no controlling mental power, or if through the overwhelming violence of mental disease his intellectual power is for the time obliterated, he is. not a responsible moral agent and is not punishable for criminal acts.
12. That if the jury believe from the facts and circumstances testified to by the witnesses, that the defendant was of unsound mind previous to the killing of Mathews, and up to the time when the act was done, and that unsoundness of mind was such as to fix a delusion upon the mind of the defendant upon the subject of violence to his sister,, which left him incapable of judging between right and wrong with referance to, that subject, he should he acquitted,
13. That, in forming a conclusion as to the guilt or innocence of the defendant, the jury should consider the state and condition of the prisoner’s mind prior and subsequent to the killing, and if from all the evidence in the cause, they believe him of unsound mind at the time the act was done, they should acquit,
14. That the evidence of physicians, examined as experts, is competent evidence to assist them in forming correct opinions of what unsoundness of mind is, and what the state of the prisoner’s mind now is.
15. That if the jury have a reasonable doubt resting on their minds of the guilt of the defendant, they should acquit.
16. That the jury have the power to find the defendant guilty of a less offence than the one charged in the indictment, if from the evidence in the cause they believe him guilty of such less offence,
17. The rule of law is, that the whole of a confession must be taken together if introduced by the prosecutor, and it is entirely a question for the jury how far and to what extent the confessions of the prisoner are true.
All of which said instructions, the court refused, except the last; to which refusal the defendant excepted.
Thereupon the court gave to the jury the following charge :
“ Gentlemen of the jury. The evidence in this cause and the arguments of counsel on behalf both of the prisoner and the State having been now concluded, the weighty and most responsible duty is devolved upon you of saying upon your oaths, from ¿the evidence before you, whether the defendant is or is not guilty of the crime of murder, with which he stands charged. To the commission of any crime there is necessary, not only the doing of an unlawful act, but the possession of *229 adequate mental capacity to know that the act is wrong at the time of doing it, and the power of choosing between the commission of the act and its non-commission.
In accordance with this definition, the law of the present case may he considered under two branches.
1st. Whether the act charged in the indictment has been committed, as therein charged, and if so,
2d. Whether at the time of committing it, the defendant was capable of committing crime ; in other words, what rules and principles of law ought to govern you in passing upon the defence set up in this case.
And here it may be proper to remark, that the statutes of this State do not permit the court to express an opinion upon the evidence given upon this trial, but only to place before you such legal rules and principles applicable to the case as ought to govern you in its decision. First, then, in regard to the commission of the act charged ; it is exclusively your province, gentlemen of the jury, to say from all the evidence which has been given before you, whether the defendant did or did not commit the act charged in this indictment to have been done by him. The indictment charges the defendant with murder in the first degree, and if from the evidence you find that the defendant committed the act charged in the indictment,in manner and form as therein charged; that he committed it wilfully, deliberately, premeditatedly, and with malice aforethought, that is, without legal justification or excuse, and under circumstances showing wickedness and depravity of heart, you ought to find him guilty, unless you shall believe from the evidence that at the time of committing the act, the defendant was incapable of committing crime.
It is a rule of law, founded in reason, that the confessions of a defendant, when voluntarily made, are evidence against him, because common experience proves that a man will not, without motive for doing so, confess facts to his disadvantage, unless they are true; such confessions are always strengthened by circumstances corroborative of their truth. It is also a rule of law, that when the confessions of a defendant are given against him, the whole of what he says at the time of such confession, as well that which is in his favor as that which is against him, must be taken together as evidence of the facts stated ; but it is the right of the jury to disbelieve and reject any portion of such statements, which the jury may believe either intrinsically improbable, or contradicted by other and more satisfactory evidence.
If, gentlemen, upon consideration of all the evidence given in the; *230 cause, you shall entertain a reasonable doubt of the commission of the act by the defendant as charged in the indictment, it will be your duty, gentlemen, without proceeding farther, to acquit the defendant. But if, from the evidence, you are satisfied beyond a reasonable doubt, that the act as charged in the indictment was committed by the defendant, it will then become necessary for you to proceed to the consideration of the defence here set up, to wit:
That at the time of the commission of the act, the defendant was, by reason of insanity, incapable of committing crime.
Before proceeding to lay down legal rules to aid you in the decision of this question, or rather the first legal rule which it is incumbent on the court to bring to your attention is that the law presumes every man who has arrived at the years of discretion, to be sane and capable of committing crime, until the contrary is shown; so that the State, after proving the unlawful act, need offer no evidence whatever, of the sanity of the defendant, but may rest upon the legal presumption of sanity, until the defendant shows the contrary.
This defence is emphatically one which the defendant must malee out, and it must be made out to the satisfaction of your minds. For if the evidence merely shows a case of doubt where the defendant might or might not be insane, this is not sufficient to authorize an acquittal. I repeat, if the evidence shows merely that the defendant might have been insane, at the time of the commission of the act, but does not show satisfactorily to your minds that he teas, insane at that time, this is not sufficient to warrant an acquittal.
Another point to which I think it necessary to call yo.ur attention, gentlemen, is, that in order to constitute a defence to this charge, insanity must not only be proved to have once existed, but it must be shown to have existed at the time of the commission of the unlawful act.
The question, therefore, for your decision, is not as to the mental condition of the prisoner, at the present time. This is entirely immaterial, except so far as it may have a tendency to show in connection with other evidence, that he was insane at the time of committing the act. I say, in connection with other evidence, for even the most positive and conclusive proof of the defendant’s present insanity would bo insufficient to warrant his acquittal, without evidence of his insanity at the time of committing the act. For it by no means follows that because a man is found to be insane at one time, that therefore he has always been insane, or that therefore he was insane at any prior point of *231 time. But if you find from the evidence that the defendant was insane at any time prior to that of the alleged commission of the act of homicide, the law in such case presumes the continuance of that insanity, until a lucid interval or a restoration to reason is shown. But if you find from the evidence that after the occurrence of the insanity and before the commission of the act charged, a lucid interval did take place, then no presumption of the existence of insanity, at the time of the act, can arise from the proof of such former insanity.
In regard to the degree of insanity necessary to exempt an individual from responsibility for criminal acts, the law is that his mind must have been so far impaired or destroyed, that he was unconscious at the time of committing the act, that it was wrong, and that he ought not to doit, or he must have been so irresistibly impelled to the commission of the act, by insane impulse ; that he had not the ability to resist that impulse ; to control his actions and choose between right and wrong. I repeat, therefore, if you find from the evidence that the defendant committed the act charged, the question for you to determine is, whether at that time he was capable of knowing that the act which he was committing was an offence against the laws of God and man, and had at that time the power of choosing between good and evil, in reference to that act. If though laboring under hallucination or partial insanity, his mind was not so far clouded or destroyed as not to know the act was wrong, he cannot be excused for the commission of the act.
In d etermining this question, gentlemen, you ought carefully to consider and review all the facts and circumstances given in evidence, to ascertain whether, at the time of committing the act, the defendant evinced a knowledge or consciousness that he was doing or about to do a wrong and criminal act.
When monomania or partial insanity is set up as a defence to the charge of crime, in order to constitute such defence, it is necessary that the subject of insanity should lead to the fatal act; in other words, there must he a connection between the crime and the insanity, so that but for the existence of that insanity, the crime would not have been committed. In the present case you ought first to consider whether the defendant was really under the insane delusion that the deceased Mathews had abused and ill-treated his sister, or whether this statement was merely a falsehood invented by him after the act, as an excuse for it.
To make this an insane delusion, it must have had no existence in fact, the defendant must have believed it true, and have been led to that belief under the influence of insanity and without any such reason *232 or cause for believing it, as would have influenced a sane man; for if the fact had existence and the defendant knowing it took the life of Mathews, for that reason, this would be evidence of a killing with malice and not from insanity.
In the second place you ought to consider whether, supposing such insane delusion to have existed, the defendant was under the still further insane delusion, that for those supposed injuries and indignities to his sister, he had the right to take the life of Mathews ,* in other words, that to take the life of Mathews in revenge for such injuries, was not against the laws of God or man, but was right and proper. Tor you will perceive, gentlemen, that the imaginary existence of these facts, under the influence of insane delusion, could furnish no farther justification or excuse for the act, than the real existence of those facts would have done ; so that unless the defendant was by his insanity on this subject, deprived of the mental power of drawing the proper conclusions in regard to these facts, in other words, deprived by his insanity of the power of knowing that these facts did not authorise the taking of life, his delusion upon the subject of these injuries can form no excuse for his act.
The fact that some or all of a person’s ancestors have been insane, does not of itself prove that person insane, but where there is some direct evidence of insanity it serves to increase the probability of insanity.
The opinions of medical men, gentlemen, should have weight with you only so far as their means of knowledge and correct information upon the facts testified to, show them deserving of it.
In conclusion, gentlemen, if you are satisfied from the evidence beyond a reasonable doubt, that the defendant committed the act charged upon him in the indictment, and in the manner and form therein set forth and charged, and if it has been shown to the satisfaction of your minds that at the time of committing the act, he was so far deprived of reason as not to know that the act which he was committing was wrong, and was not so far deprived of will as not to possess the power of choosing between right and wrong in regard to this act, you ought in such case to find him guilty of murder in the first degree.
But if, on the other hand, from the evidence you have a reasonable doubt of the commission of the act as charged; or, if your minds are satisfied from the evidence, that at the time of the alleged commission of the act of homicide, the defendant had not the possession of reason sufficient to know that the act was wrong, or impelled by insane impulse *233 had not the power of refraining from the commission of the act; you ought in any one of the cases last mentioned to acquit.”
To the giving of which the defendant’s counsel excepted.
The charge given by the court to the jury is comprehensive enough to cover the whole case, and we do hot perceive any legal objection to it. It embraces most of the principles contained in the instructions asked for by the defendant’s counsel; those not embraced in it are either wrong in principle or have no particular application to the ease under consideration; therefore we see no error on this point.
After the jury had been charged by the court and retired to their room to consider of their verdict, they returned into court and made the following inquiry of the judge :
“ The jury wish to know, whether they can find the prisoner guilty, in any other degree; than that charged in the indictment for murder in the first degree.” The court replied: “Not if you find from the evidence, that the defendant committed the act charged upon him in the indictment; and committed it wilfully; deliberately, premeditately, and with malice aforethought, and in all other respects, in manner and form as charged in the indictment; and that at the time of so committing the said act, he knew that it was wrong and that he ought not to do it, and and at the same time had the power of will to choose between its commission and its non-commission.”
It is insisted that the court committed error in not informing the jury, that they had a right, under the law of the land; to find the defendant guilty of murder in the second degree or of manslaughter. We entertain a different opinion, and think that the court very properly responded to the inquiry of the jury. The defendant stood charged with murder in the first degree, he impliedly admitted the taking of the life of the deceased and placed his defence upon the fact, that, at the time he committed the act, he was incapable of crime by reason of being insane. This defence he was bound to make manifest to the jury, otherwise, the crime with which he stood charged, remained confessed, without any palliating or extenuáting circumstances to reduce it to an inferior degree of crime. The jury had therefore no legal discretion ; they were bound either to convict the defendant of murder in the first degree, because he had not established the truth of his defence; or, having proved to the' satisfaction of the jury, that he was insane at the time of doing the deed they should have acquitted him of all crime. It is not like a case where a defendant is charged in an indictment with *234 murder in the first degree, whilst the evidence proves the killing to have been done under circumstances which makes the offence only manslaughter; in which case, the jury may find a verdict for manslaughter. Our statute divides murder into two degrees—first, when committed by means of poison, or by lying in wait, or by any other kind of wilful, deliberate, and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate any arson, rape, robbery or other felony ; and second, all other kinds of murder at common law, not declared by statute to be manslaughter or justifiable or excusable homicide. The evidence on the part of the state, consisting mainly of the confessions of the defendant, voluntarily made, make out a case coming within the first degree of murder, and although the duty is a disagreeable one to find an individual guilty of the crime of murder in the first degree, the penalty of which is a forfeiture of life, yet the jury were bound under their oath, so to find in the case, unless they were satisfied from the evidence, that the defendant was insane at the time he committed the act. If the truth of the defence made was thus established the defendant was entitled, upon the principles of law, and not through the clemency of the jury to an absolute acquittal. It is a case in which there is no middle ground to occupy, no legal compromise to make, no discretion vested in the jury; they must either find the defendant guilty as charged and confessed, or acquit him on the ground, that by reason of insanity he is irresponsible to the laws.
There is only one other question which we deem it necessary to notice, and which was raised on the examination of the evidence. The father of the defendant being under examination, testified as to the state of the defendant’s health for sometime prior to the commission of the act charged ; also as to his conduct and other circumstances tending to show that at different periods he was not in his proper mind; when the defendant’s counsel asked the witness the following questions:
1st. Was his mind affected by his dreams and other sights which he saw in his dreams ?
2d. From all that you have seen and known of the defendant, what is your opinion as to whether he was or was not insane at the time he left your house for Arkansas.
Bd. From the acts and conduct of the prisoner for two years previous to his going to Arkansas, was he an insane person?
Ans.—His conduct was such as to induce my particular and special *235 attention—it was because I did not know but that he was going distracted.
These questions and answers were objected to by the prosecuting attorney, and the objections sustained by the court. To the action of the court, on this point, the defendant excepted, and also assigns it for error.
The principle involved in the above exception, has been examined by' the appellate court of North Carolina, in the case of Clary’s adm’r vs. Clary 2 N. C. Rep. 78, wherein it was attempted to set aside a will, because of the insanity of the testator, at the time of its execution; and the opinion of a witness was asked as to the state of the testator’s mind at the time of making the will. The opinion of the court is so comprehensive and conclusive and meets our views of the law so fully, that we shall adopt that part of the opinion which discusses this question.
The court say iTt is certainly the general rule that witnesses shall be examined as to facts, whereof they have personal knowledge, and not as to those, in regard to which they have no personal knowledge,.but have only formed an opinion or belief. But this rule necessarily admits of exceptions. There are facts, which from their nature exclude all direct positive proof, because they are imperceptible by the senses, and of these no proof can be had. except such as is mediate or indirect. No man can testify, as of a fact within his knowledge, to the sanity or insanity of another. Such a question, when it arises,must be determined by other than direct proof. The precise enquiry then is, must the evidence be restricted to the proof of other facts, coming within the knowledge of the witnesses. And from which the jury may draw an inference of sanity or insanity—-or may the judgment and belief of the witnesses,Tounded on opportunities of personal observation, be also laid before the jury, to aid them in forming a correct conclusion. We understand, that this is a matter, on which different judges have ruled differently on the circuits, and it is important that a uniform rule should be settled in regard to it. The point was not determined in Crowell vs. Kirk 3 Dev. 355 ; nor are we aware of any direct and authorative decision,, which supercedes the necsssity of recurring to general principles and legal analogies to- ascertain what is right.
In the first place, it seems to us that the restriction of the evidence to a simple narrative o$ the facts, having or supposed to have a bearing on the question of capacity, would, if practicable, shut out the ordinary means of obtaining truth; and, if freed from this- objection,' cannot in- *236 practice be effectually enforced. The sanity or insanity of an individual may be a matter notorious and. without doubt in a neighborhood, and yet few, if any, of the neighbors may be able to lay before the jury distinct facts, that would enable them to pronounce a decision thereon, with reasonable assurance of its truth. If the witness may be permitted to state, that he has known the individual for many years ; has repeatedly conversed with him, and heard others converse with him; that the witn ess had noticed in these conversations that he was incoherent and sjlly; that in his habits he was occasionally highly pleased and greatly vexed without a cause; and that in his conduct he was wild, irrational, extravagant and crazy ; what would this be but to declare the judgment or opinion of the witness of what is incoherent or foolish ip conversation; what reasonable cause of pleasure or resentment, and whpt the indicia of sound or disordered intellect? If he may not so testify, but must give the supposed silly or incoherent language, state the degrees and all the accompanying circumstances of highly excited emotion, and specifically set forth the freaks or acts, regarded as irrational, an.d this without the least intimation of any opinion, which he has formed of their character—where ar.e such witnesses to be found? Can it be supposed, that those not having a special interest in the subject shall have so charged their memories with those matters, as distinct independent facts, as to be able to present them in their entirety and simplicity to the jury? Or if such a witness be found, can he conceal from the jury the impression, which has been made upon his own mind; and when this is collected, can it be doubted, but that his judgment has been influenced by many, very many, circumstances, which he has not communicated, which he cannot communicate, and of which he is himself not aware ?
vVe also think there is an analogy in the investigation of questions of this kind and in the investigation of othe.r questions, wherein positive and direct evidence is unattainable, and in which the rule of evidence is well established. Of this kind are questions of personal identity and hand-writing, Mere opinion as such is not admissible. But where it is shown that the witness has had an opportunity of observing the character of the person or the handT.writing, which is sought to be identified, then his judgment or. belief, framed upon, such observation, in evidence for the consideration of the jury ; and it is for. them to, give to this evidence that weight, which the intelligence of the witness, his means of observation and all the other circumstances, attending, his tes-; *237 tinony, may in their judgment deserve. And why is this, hut because it is impossible for the witness to specify and detail to the jury all the minute circumstances, by which his own judgment was determined, so as to enable them by inference from these to form their judgment thereon. And so it is in questions respecting the temper, in which words have been spoken or acts done. Were they said kindly or rudely, in good humor or in anger, in a jest or in earnest? What answer can be given to these enquiries, if the observer is not permitted to state his impression or belief? Must a fac similie be attempted, so as to bring before the jury the very tone, look, gestures and manner, and let them collect thereupon the disposition of the speaker or agent? It is a well known exception to the general rule requiring witnesses to testify facts and not opinions, that in matters involving questions of science, art, trade or the like, persons of skill may speak not only to facts, but give their opinions in evidence. It is insisted that by the terms of this exception, persons not claiming to possess peculiar skill, and all persons upon matters not requiring peculiar skill are excluded from giving opinions. Professional men are allowed to testify to the principles and rules of the science, art or employment in which they are especially skilled, as general practical truths or facts ascertained by long study and experience; and also may pronounce their opinion as to the application of these general facts to the special circumstances of the matters under investigation. Whether these circumstances have fallen under their own observation or- have been given in evidence by others. The jury being drawn from the body of their fellow-citizens are presumed to have the intelligence, which belongs to men of good sense, but are not supposed to possess professional skill, and, therefore in matters requiring the exercise of this skill, are permitted to obtain what is needed from those who have it, and who are sworn to communicate it fairly. Thus, ship-masters have been allowed to state their opinions on the seaworthiness of a ship from a survey taken by others ; physicians to pronounce upon a wound which they have not seen; and painters and statuaries to give their opinion whether a painting or statue be an original or copy, although they have no knowledge by whom it was made. This is mere opinion,, although the opinion of skilful men. Thus none but professional men are permitted to give in matters involving peculiar skill, and none whatever are allowed to give in matters not thus involving skill; because with this exception, the jury are equally competent to form an opinion as the witness, and, with this exception, their judgment *238 ought to be founded on their own unbiased opinion. But judgment founded.on actual observation of th'e capacity, disposition, temper, character, peculiarities of habit, form, features or hand-writing of others, is more than mere opinion. It approaches to knowledge, and is knowledge, so far as the imperfection of human nature will permit knowledge of these things to be acquired and the result thus acquired should be communicated to the jury, because they have not the oppornities of personal observation, and because in .no other way can they effectually have the benefit of the knowledge gained by the observation of others.
Before a witness should be received to testify as to the condition of mind, it should appear that he had an adequate opportunity of observing and judging of capacity,
tCBut so different are the powers and habits of observation in different persons, that no general rule can be laid down as to what shall be deemed a sufficient opportunity of observation, other than that it has in fact enabled the observer to form a belief or judgment thereupon; and the weight of his opinion must depend upon a consideration of all the circumstances, under which it was formed.^
For the foregoing reasons we are of opinion that the criminal court committed error in excluding the question and answer of the defendant’s father from the consideration of the jury, and that for this reason, the verdict should have been set aside, and a new trial awarded. The judgment of the criminal court is reversed, the verdict set aside and a new trial granted the defendant.
The cause is remanded to the criminal court.