## THE STATE v. HOLLOWAY, Appellant.

*Division Two, May 8, 1900.*

1. **Instruction: REASONABLE DOUBT.** An instruction that a reasonable doubt of defendant's guilt must be a substantial one, formed on the careful consideration of all the facts and circumstances in the case, is proper.

2. ———: **HOMICIDE: ADMISSION IMPLIED IN INSANITY DEFENSE.** On a prosecution for homicide, where the defense was insanity, an instruction was not objectionable because it informed the jury that defendant did the killing alleged, since defendant, by his plea of insanity, admitted such fact.

3. ———: **INSANITY: MURDER IN SECOND DEGREE.** Where insanity was the defense on a trial for murder, an instruction that defendant might be of sufficient mind to intend the murder, and yet not be of such understanding and control of his mind as to coolly deliberate murder, and, if the jury so found, it must find defendant guilty of murder in the second degree, was properly refused, since defendant, under his plea of insanity, could only be found guilty of murder in the first degree or innocent.

4. **Improper Remarks: NO EXCEPTIONS.** Where the court's attention was not called to alleged improper remarks of the prosecuting attorney, and exceptions preserved, they can not be reviewed.

5. **Evidence: INSANITY: LAY WITNESS.** A lay witness may testify that a person is insane without giving the facts on which he bases his opinion.

Appeal from Osage Circuit Court.— *Hon. Rudolph Hirzel,* Judge.

AFFIRMED.

*William A. Davidson* and *A. K. Monroe* for appellant.

(1) The court erred in giving instruction, numbered 6, on reasonable doubt. It tells the jury that in order to acquit the defendant on the grounds of reasonable doubt, that doubt must arise out of the evidence, thereby excluding

from the consideration of the jury any doubt that may arise from lack of evidence. This is calculated to mislead the jury. State v. Nueslien, 25 Mo. 111; State v. Bobbst, 131 Mo. 339; State v. Blue, 136 Mo. 41. (2) The court erred in giving instruction numbered seven. In one part it informs the jury that the defendant did the killing charged in the indictment, while in another that they must presume him innocent until proved guilty beyond a reasonable doubt. This is conflicting and ambiguous and was liable to have confused the minds of the jury. It assumed that the defendant did the killing. Nor is the error cured by giving a correct instruction which is inconsistent and irreconcilable therewith. State v. Herrell, 97 Mo. 105; State v. Cable, 117 Mo. 336; .State v. Clevenger, 25 Mo. App. 653. (3) It is reversible error to allow the prosecuting attorney, without rebuke, to state in his closing argument that if the defendant was turned loose, he would wreak his vengeance on those who assisted in securing his arrest, and that the attorneys for defendant could have had a physician to examine the defendant and did not do so, and if he was examined the physicians would pronounce him sane. State v. Mahly, 68 Mo. 316; State v. Lee, 66 Mo. 165; State v. Reed, 71 Mo. 200; State v. Martin, 74 Mo. 547; State v. Jackson, 95 Mo. 623; State v. Young, 99 Mo. 666; State v. Ulrich, 110 Mo. 350; State v. Fisher, 124 Mo. 460; State v. Bobbst, 131 Mo. 328.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1) The defendant has seen ⌐ ; to assail instruction numbered 6. The basis of this objection is found in the opinion of this court in the case of State v. Blue, 136 Mo. 41. In that case the court gave an instruction defining reasonable doubt to be, "a substantial doubt growing out of and consistent with the evidence." This instruction was criticised for

the reason that it deprived the defendant of the benefit of any reasonable doubt as to his guilt that might have arisen from the insufficiency of the evidence or upon the full and fair review of all the evidence in the case. The instruction in the case at bar is not subject to the criticism of the court in the Blue case. The jury was here told that to authorize an acquittal on the ground of reasonable doubt such doubt must be a substantial one formed on the careful consideration of all the facts and circumstances in the case and not a mere possibility of his innocence. State v. Sacre, 141 Mo. 64. (2) Instruction numbered 7 is objected to by the defendant. This instruction is upon the question of insanity interposed as a defense. The criticism made is that it. "informs the jury that the defendant did the killing charged in the indictment, in one place, and in another that they must presume the defendant innocent until proven guilty beyond a reasonable doubt. This is conflicting and ambiguous and liable to confuse the minds of the jury. It assumes that defendant did the killing. Nor is it cured by giving a correct instruction which is insufficient and irreconcilable therewith." This objection can not, to any serious extent, be considered. The plea of insanity was interposed in defense. By this plea the homicide is confessed. The statement in the instruction to the effect that defendant did the killing does not by any means prejudice his case. State v. Soper, 148 Mo. 239; State v. Pagles, 92 Mo. 309; State v. Welson, 117 Mo. 507; 1 Wharton's Crim. Law, sec. 61; 2 Bishop's Crim. Law, sec. 669. (3) Counsel for defendant urge in their brief that the court committed error in refusing to instruct the jury upon murder in the second degree, as requested by them at the time. In view of the fact that the defendant was indicted for murder in the first degree, and the plea of insanity interposed as a defense no instruction on murder in the second degree should have been given.

SHERWOOD, J.—The questions presented by this record relate to the homicide of Julius Boillot, perpetrated by defendant on Christmas eve, 1898, in Osage county, by shooting him to death with a pistol, and repeatedly shooting him after he had fallen to the ground.

The circumstances relating to the death and those preceding and subsequent thereto and connected therewith, are in substance and effect the following: Defendant at the time of the occurrence was a single man of about 31 years of age, born and reared near Aud, in Osage county. When about four years old his father died. Soon after the decease of the latter, the farm on which defendant's mother lived, was sold under a deed of trust for $600, which had been placed on the land by his father, and the land was bought at the sale by Julius Boillot. This sale, and the widow and her family being compelled to leave their home, engendered very bitter feelings in the breast of her son, especially in that of the latter, and this feeling received accession in consequence of persecutions and annoyances to which the widow was subjected by having her stock killed or driven off or stolen, her fences thrown down and the rails hauled away, etc., etc. Whether these acts were those of Boillot or not, does not fairly appear.

Finally, it seems, upon the payment to her of a sum of money by Boillot, the widow was induced to quit the farm, but bore within her breast, as did her son in his, but more intensely, a sense of having been grievously treated and injured by Boillot, in consequence of the facts aforesaid. And this bitter feeling suffered no abatement as the years went by, but gathered intensity with the lapse of time. As defendant grew toward man's estate, the mention of Boillot's name in conversation would often excite him to a phrensy of anger, which some of the witnesses called insanity and others merely attributed such exhibitions to an ungovernable tem-

per. In these paroxysms of rage, he indulged in threats against their subject. About one year before the tragedy which forms the gravamen of the charge in the indictment, defendant was about to go and kill Boillot, but was prevented by one witness.

On the night of the 24th of December, 1898, there was a public gathering at the school house at Aud, in Osage county, the people in the vicinity assembling for the purpose of delivering presents from a Christmas tree. Defendant was on the outside of the school house, gazing intently at what was going on in the school house, Boillot being in there. After the meeting had adjourned Boillot had gone to assist his daughter in mounting her horse preparatory to returning home. While he was standing beside the horse and about fifteen yards from the corner of the building where his son stood, the defendant came running around the house raising his revolver, fired four or five times, two or three of the bullets taking effect in Boillot's breast. He sank to the ground and expired in a few moments. The defendant then run a short distance, turned around, and exclaimed in a tone loud enough for a number of persons present to understand, "I am the Reverend John Holloway and I have killed Jul Boillot." Defendant then disappeared in the woods and was in hiding several days. He was arrested near his mother's home, at the house of a justice of the peace, to whom he surrendered, after receiving a scalp wound from persons in pursuit. Defendant was identified by the son and daughter of the deceased as well as by other persons present, as the perpetrator of the crime. He afterwards admitted committing the deed, and said he was glad of it.

Insanity was interposed as a defense. The testimony of the professional, as well as lay witnesses, greatly preponderated in favor of the view that defendant was sane.

A sufficient outline of the testimony has already been given.

The instructions given on behalf of the State were fifteen in number, and fully covered all the points necessary for the information of the jury in the performance of their duties; they embraced murder in the first degree and insanity, with appropriate definitions, etc., etc. To these instructions exception was saved on part of defendant, and an instruction asked for him in these words:

"The court instructs the jury that the defendant may be of sufficient mind as to intend the murder of the deceased and at the same time be not of such understanding and control of his mind and mental powers as to coolly deliberate said murder, and if you so find from the evidence you will find the defendant guilty of murder in the second degree." And upon its refusal exception was saved.

Particular assailment is made on the 6th instruction given, which is the following:

"The court instructs you that the defendant, in law, is presumed to be innocent, and that it devolves upon the State to prove, by evidence, to the satisfaction of the jury, beyond a reasonable doubt, that the defendant committed the crime as charged in the indictment and explained in these instructions; and if, upon a view of the whole case, you have a reasonable doubt of defendant's guilt, you will give him the benefit thereof and acquit him. But a reasonable doubt to authorize an acquittal on that ground must be a substantial doubt of defendant's guilt, formed on the careful consideration of all the facts and circumstances proven in the case, and not a mere possibility of the defendant's innocence."

A reasonable doubt "formed on the careful consideration of all the facts and circumstances in the case," necessarily involves a consideration of such facts and circumstances as are lacking to establish and make complete the full measure of

defendant's guilt. These two considerations of the evidence and the lack of evidence are bound together by an indissoluble connection as surely as the premises of a syllogism involve its conclusion. It is logically impossible for a jury to consider the sufficiency of evidence, without at the same moment considering, and with the same thought, its insufficiency. A different mental operation would be as much dehors the power of the human mind as would be the remembrance and the forgetting of the same thing at the same instant. In State v. Sacre, 141 Mo. 64, an instruction similar to the one under review, was ruled to be unobjectionable. In State v. Blunt, 91 Mo. 503, a like ruling was made where the instruction complained of read: "To authorize an acquittal on the ground of reasonable doubt alone, such doubt should be a real, substantial, well-founded doubt, arising out of the evidence in the cause, and not a mere possibility that the defendant is innocent." The objection, therefore, taken to the instruction, must be held untenable.

But it is difficult to refrain from asking why it is that circuit judges do not copy the instruction on reasonable doubt which passed muster in State v. Nueslein, 25 Mo. 111, and in every other case since, where it has been copied? No other reason suggests itself, except that the opinions of this court are never read, or if read are never heeded, by the trial judges.

Instruction 7 of the given series, is also assailed; it reads in this way: "Insanity is interposed by the counsel for the defendant as an excuse for the charge set forth in the indictment. This defense, when established, is one the law recognizes, and should insanity be proven by the evidence in the case, to the reasonable satisfaction of the jury, it would be the duty of the jury in that event to acquit the defendant altogether. Insanity is a physical disease located in the brain, which disease perverts and deranges one or more of the mental and moral faculties so far as to render the person suffer-

ing from this affliction incapable of distinguishing right from wrong, in reference to the particular act charged against him, and incapable of understanding that the particular act in question was the violation of the law of God and of society. Wherefore the court instructs the jury, that if they believe and find from the evidence that at the time he did the killing, charged in the indictment, the defendant was so perverted and deranged in one or more of his mental and moral faculties, as to be incapable of understanding at the moment he killed Julius Boillot, that such killing was wrong, and that he, the defendant, at the time was incapable of understanding that this act of killing was a violation of the laws of God and of society; if the jury find that he was so insane, they should find him not guilty. Insanity is either partial or general. General alienations always excuse. Partial insanity does not always excuse. One may be partially insane and yet be responsible for his criminal act. The law does not excuse unless the derangement is so great that it actually renders the person incapable, at the time of its commission, of distinguishing between right and wrong in the particular act charged and proved against him.

"The law presumes every person who has reached the years of discretion to be of sound mind, and this presumption continues until the contrary is shown. So that when, as in this case, insanity is pleaded as a defense to a criminal charge, the fact of the existence of such insanity, at the time of the commission of the homicide charged, must, before you can acquit on that ground, be established by the evidence to your reasonable satisfaction, and the burden of proving this fact rests with the defendant. To establish the insanity of the defendant positive and direct proof of it is not required.

"To entitle him to an acquittal by reason of his insanity, circumstantial evidence, which reasonably satisfies your mind of its existence, is sufficient. As the law presumes the defendant innocent, the burden of proving him guilty rests

with the State, and before you should convict him of his guilt must be established beyond a reasonable doubt. On the other hand, to entitle the defendant to a verdict of not guilty by reason of his insanity, the law requires him to prove it, not, however, beyond a reasonable doubt, but only to your reasonable satisfaction.

"From all this it follows, that, although you may believe and find that the defendant did the killing alleged, yet, if from the evidence you further find that at the time he did it he was in such an insane condition of mind that he did not know he was doing wrong and did not comprehend the nature and character of the act, then such shooting was not in law or in fact, malicious or felonious, and you ought to acquit him on the grounds of insanity and by your verdict so say.

"The court instructs the jury that if they find the defendant not guilty of the homicide charged, they will so state in their verdict and they will also state whether the defendant has entirely and permanently recovered from such insanity."

The ground of attack on this instruction is contained in these words, that it "informs the jury that the defendant did the killing charged in the indictment, in one place, and in another that they must presume the defendant innocent until proven guilty beyond a reasonable doubt. This is conflicting and ambiguous and liable to confuse the minds of the jury. It assumes that defendant did the killing. Nor is it cured by giving a correct instruction which is insufficient and irreconcilable therewith."

The instruction in telling the jury that defendant did the killing only did what defendant had already done by his plea of insanity; confessed the doing of the act itself, then endeavored to avoid, and denied the guilt of it. [State v. Pagels, 92 Mo. loc. cit. 309; State v. Welsor, 117 Mo. 570; State v. Soper, 148 Mo. loc. cit. 239.] The assumption that defendant did the killing, therefore, did defendant no harm,

State v. Holloway.

and was not at all inconsistent with another instruction which told the jury they must find defendant guilty beyond a reasonable doubt.    Guilty, but not of the physical act of killing, but of the crime of murder, if insanity existed.

The refusal of the court to give the instruction asked by defendant, is another ground of complaint. No error occurred in this; if sane defendant was indubitably guilty of murder in the first degree; if insane, of nothing.    No half way house exists in a case of this sort, between murder in the first, and any minor degree of that crime.    Defendant, if sane, "could coolly deliberate said murder;" if insane, he could neither deliberate nor premeditate, and consequently was guiltless of the crime charged, and of any degree of that crime; and defendant's counsel in their zeal for their client, do not insist that the crime so long delayed, was done in hot blood.

The bill of exceptions does not preserve the objectionable remarks asserted to have been made by the prosecuting attorney.    If such remarks were made, the attention of the court should have been called to them, and the proper course taken in regard to them, as has been so often pointed out, and then if need be, an exception saved, etc.    And, as has been so frequently decided by this court, the statement in the motion for a new trial, does not go a hair toward proving such remarks were made.

An exception was however taken and saved to lay witnesses testifying as to the sanity of defendant.    This exception goes for naught under the ruling in State v. Soper, 148 Mo. loc. cit. 235, and cases cited.

Finally, it is insisted that error occurred in admitting certain persons on the panel of jurors.    This objection is overruled by State v. Taylor, 134 Mo. 109, and subsequent cases.

The defendant has been fairly tried; his guilt is manifest beyond a reasonable doubt; his "long settled and deadly hate" has been gratified by the life-blood of his unresisting

victim; but for this he must pay the penalty which the law provides, and so the sentence it has pronounced must be executed. All concur.