THE STATE v. CLAUDE GILLMAN, Appellant.—44 S. W. (2d) 146.

Division Two, December 1, 1931.

*Howard Sidener* and *Verne Lacy* for appellant.

308

*Stratton Shartel,* Attorney-General, and *Don Purteet,* Assistant Attorney-General, for respondent.

FITZSIMMONS, C.—Defendant, Claude Gillman, together with John Pepe and John Sinovich, was indicted by the grand jury of St. Louis County on the charge of kidnaping Jacob Hoffman. Pepe and Sinovich made application for and were granted a severance. Defendant Gillman was tried May 19, 1930, was found guilty, and was sentenced to a term of ten years in the penitentiary. His motion for a new trial having been overruled, defendant appealed to this court. At the close of the State's case, defendant offered a demurrer, which the court refused to give. Defendant then rested his case. The main question for decision is the sufficiency of the evidence offered by the State.

Jacob Hoffman, a resident of the city of St. Louis and having a cigar store at 112 North Broadway in that city, had an office on the floor above the store. He testified that he was in his office on the evening of February 18, 1930, when three men, masked with handkerchiefs over their lower faces and armed with pistols, entered and robbed him of $200. They led him down stairs to the street and placed him in an automobile in which there was a fourth man at the wheel. His three captors also got into the car, which was driven about the streets of St. Louis at high speed and at last came to a stop at a point which Hoffman sensed was in the southern part of St. Louis. With his eyes blinded by the taped glasses he was led into a building where "they" kept him the first night of his captivity, and until the next night. Then he was driven to another house into which his captors led him on the second night. And there he remained until the third night, his eyes meantime having

been blindfolded. He was taken to still another place on the third night over a very hard road, and, on the way, one of his captors said the chances were that he (Hoffman) would be there for a week. He was kept for a time in a shed or a cottage, it seemed to him, with one of the men in charge of him. The others left but 'returned after an absence of five or ten minutes and gave orders that a bed, which was in the shed, be moved into a cellar. This was done and Hoffman, still blindfolded, was led into the cellar of a house, where he was found the next morning, the fourth day of his captivity, by the sheriff of St. Louis County and by police officers of the city of St. Louis acting in consort.

The cellar, as described by the officers, was beneath the brick house of Joseph Sinovich, 4025 Bayless Avenue, between Lemay Ferry Road and the Kirkwood branch of the Missouri Pacific Railway, in the southern part of St. Louis County. The house was fifteen or twenty feet above the highway and hidden by trees. A grove, used for amusements, was west of the house and a ball park was east of it. The cellar was separated into two parts by a solid wall. The part into which Hoffman was led was subdivided into two small rooms by a partition with a doorless communicating passageway. Stairs covered by the familiar type of folding cellar doors led down from the yard of the Sinovich premises to an area-way from which conventional wall doors admitted to the cellar spaces. A porch above the area-way together with the folded doors on the yard level kept the cellar rooms in darkness. In the part of the cellar where Hoffman was kept there was one small window which, when the officers came, was obscured by heavy dark paper. An electric wire with a brown globe giving little or no light, was also in the cellar. Of the two rooms into which was subdivided the half of the cellar in which Hoffman was captive, one was ten by twelve feet and was entered by a door from the area-way. The other, a smaller room, about six by ten or twelve feet, being the room in which Hoffman was kept, was entered from the adjoining larger room through the doorless opening already mentioned.

When the officers came into this underground prison about 11 A. M. on February 21, 1930, the dishes and the remnants of Hoffman's breakfast were on a box beside the cot on which he had lain. In the larger room, hard-by the doorway to Hoffman's smaller room, was a chair which the sheriff of St. Louis County described as ''one of these canvas-back chairs, deck chairs that you recline in.'' And on top of a barrel within two feet of the chair near the door were three .45 calibre automatic pistols, each with a cartridge in the chamber and a full load in the clip. On that morning, the fourth day of Hoffman's captivity, the sheriff of St. Louis County and a squad of detectives of the St. Louis police department drove to

Bayless Grove and searched a shed or cottage there for Hoffman. They did not find him, and several of the force made for the Sinovich house, and through the folded cellar doors into the area below. They kicked open the closed door admitting from the area to the larger room of Hoffman's cellar prison. There was a barricade and the door gave but a foot. It was dark within, but the sheriff and several detectives entered. They met and seized John Pepe, and the sheriff of St. Louis County pushed Pepe before him, as a shield, announcing the while that they were officers, and that any one else within should come out. Hoffman from his inner room shouted that he was Hoffman, that he was coming out with his hands up and they should not shoot. His was the only voice heard and he was the only one to advance. But in the darkness Lieutenant Wren collided with the defendant Gillman and seized him in the cellar within two feet of Hoffman, who had placed himself in the hands of the sheriff. There were none others in the cellar but Hoffman, Pepe and the defendant Gillman.

When Hoffman was led down to the cellar of the Bayless Avenue house the night before his rescue, four men went with him. All through the night while he lay on the cot in the inner room he heard the men whispering in the outer room. Some departed from time to time, but always there were at least two men outside his doorway. And he heard no one come or go after ten o'clock of the night of his imprisonment in the cellar. In the early evening one of the men brought him bread and coffee. The next morning, one of the men from behind the partition asked him if he wanted any breakfast and Hoffman said that he would take some ham and eggs. Through the night he had asked for and obtained permission to remove the bandage from his eyes as he had a headache. So the man with the breakfast first required him to restore the bandage before the meal was brought in. Hoffman identified the defendant as one of the two men whom he saw in the custody of the police when he was led out into the yard of the Sinovich premises after the raid into the cellar. . Over the objection of defendant the three .45 calibre automatic pistols and their ammunition which the officers found in the cellar were offered and received in evidence.

The prosecuting attorney inquired of Hoffman whether from midnight of his stay in the Bayless Avenue cellar until the appearance of the police the next morning, he was there of his own free will and he answered no. He was next asked why he did not leave there and, defendant's objection being overruled, Hoffman answered: "I was afraid of getting killed. I could not take a chance leaving there."

I.   The evidence in this case is circumstantial. But we are of opinion that it was sufficient to support a submissible question

whether defendant was guilty or innocent of the felony charged and to sustain the verdict of the jury upon the issue. Section 4020, Revised Statutes 1929, defines and fixes the punishment for the crime of kidnaping for ransom. Defendant was prosecuted under Section 4021, Revised Statutes 1929, which does not have the element of ransom in the crime denounced. Section 4021 is as follows:

"If any person shall, willfully and without lawful authority, forcibly seize, confine, inveigle, decoy or kidnap any person, with intent to cause such person to be sent or taken out of this state, or to be secretly confined within the same against his will, or shall forcibly carry or send such person out of this state against his will, he shall, upon conviction, be punished by imprisonment in the penitentiary not exceeding ten years. Any person charged with such offense may be tried in any county into or through which the person so seized, inveigled, decoyed or kidnaped shall have been taken, carried or brought."

The evidence was undisputed that certain persons willfully and without lawful authority forcibly seized and kidnaped Jacob Hoffman in the city of St. Louis, Missouri, with the intent to cause him to be secretly confined within this State against his will, and that he was so secretly confined in the county of St. Louis. This constituted the *corpus delicti* which defendant stoutly avers was not proved, because his agency was not established. The prosecution has the burden of proving that a crime has been committed before the jury proceed to inquire who committed it. [16 C. J. 529.] This is the meaning and the limit of the proof of the *corpus delicti* in any felony case. The criminal agency of the person on trial is not an element of the proof of the *corpus delicti*. [State v. Crabtree, 170 Mo. l. c. 650, 71 S. W. 127; State v. Henderson, 186 Mo. 473, l. c. 483, 85 S. W. 576; State v. Barrington, 198 Mo. 23, 95 S. W. 235; State v. Schyhart, 199 S. W. 205, l. c. 311; separate concurring opinions of BLAIR and WHITE, JJ., in State v. Joy (Mo. Sup.), 285 S. W. 489, l. c. 494.] But the agency of the accused is an element in addition to the *corpus delicti* and must be proved by evidence direct or circumstantial before a conviction can be affirmed.

That the crime of kidnaping as defined in the statute and as charged in the indictment was committed against Jacob Hoffman by the criminal agency of persons was proved by the direct testimony of Hoffman himself. Defendant did not cross-examine Hoffman, nor, as has been stated, did he offer any testimony in his own defense. The only element of the crime resting its proof upon circumstantial evidence is the criminal agency of the defendant Gillman. It is a settled rule that courts in passing upon the sufficiency of the evidence in a criminal case should take as true all substantial testimony offered by the State and tending to implicate the accused and should

indulge every legitimate inference which reasonably may be drawn from such testimony. If in the application of this rule there is found to be substantial testimony tending to support the verdict of the jury the verdict should be allowed to stand unless reversible error was committed in the progress of the trial. [State v. Henke, 285 S. W. 392, l. c. 395 and cases cited.]

Three men robbed Hoffman of $200, took him prisoner and led him off to an automobile, in which a fourth man sat at the steering wheel. There were never more than four men about Hoffman during his captivity. It was reasonable for the jury to infer from Hoffman's testimony that the same four men or some of them were with him at all times from the moment of his seizure to the time of his release. It is a fact, proved by the direct testimony of the sheriff of St. Louis County and of several police officers of the city of St. Louis, that defendant and one other were in what we may call the guard room of Hoffman's prison on the morning of Hoffman's release. Gillman was near the reclining chair and close to the barrel head on which were the loaded automatic pistols. He gave no explanation of his presence in the cellar. It was reasonable for the jury to infer that Gillman had been in the guard room at least from ten o'clock of the night before. The verdict should be allowed to stand unless reversible error was committed in the progress of the trial. We have examined the many cases cited by defendant and other cases also, and we do not find in any of them authority for changing the view which we take of this case.

II. Defendant urges that it was reversible error for the trial court to admit in evidence the three automatic pistols and the cartridges which the police found on the barrel head near the door of Hoffman's place of confinement in the cellar of the Sinovich house. The intent of the crime with which defendant was charged and of which he was convicted was to cause Hoffman to be secretly confined against his will. It is undisputed that Hoffman was secretly confined in a dark and hidden cellar. He testified that he was there against his will and this testimony was not gainsaid. But the presence of the weapons close to the hands of those in the room outside his place of confinement and near to the reclining chair at the door added to the probative force of Hoffman's testimony that he was so confined against his will. The assignment is ruled against defendant.

III. Defendant complains that the trial court failed to instruct the jury in writing upon all questions of law arising in the case, as

314

the court is required to do by Section 3681, Revised Statutes 1929. He specifies in his brief the failure of the court to instruct the jury that, before it could find defendant guilty, it must find that a conspiracy existed; that defendant was present aiding and abetting the commission of the crime; and that in order to hold defendant responsible for the acts of another it must be shown that he authorized these acts or aided or directed them. This assignment of error is not properly before us. Defendant, in his motion for a new trial, thus stated the purported errors of the trial court in the matters of instruction:

"13. Because the court erred in erroneously and falsely and not according to law instructing the jury on the issues and facts in the case, and in not properly declaring the law of the State of Missouri applicable to this case."

Even before the enactment of what is now Section 3735, Revised Statutes 1929, requiring that motions for a new trial must set forth in detail and with particularity the specific grounds or causes therefor, we held that assignments of error couched in terms as here were too general. [State v. Burrell, 298 Mo. 672, l. c. 678, 252 S. W. 709; State v. Farrar (Mo. Sup.), 285 S. W. 1000, l. c. 1004.]

Finding no reversible error the judgment is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All of the judges concur.