THE STATE v. PAUL BARBATA, Appellant.—80 S. W. (2d) 865.

Division Two, February 4, 1935.

*Joseph B. Catanzaro* for appellant.

*Roy McKittrick*, Attorney General, *Olliver W. Nolen* and *John W. Hoffman, Jr.*, Assistant Attorneys General, for respondent.

BOHLING, C.—Paul Barbata, indicted for the murder of Lillian Salamoni, was, upon trial, found guilty of murder in the first degree, and appealed from the judgment thereon. The punishment assessed was death.

Appellant resided with his wife and child, a short distance from the residence of the Salamoni family in the city of St. Louis. The Salamoni family consisted of Sam, the husband and father, Lucille, the wife and mother, and Angeline, Lillian and Joe, the children; the latter aged twenty, eighteen and sixteen, respectively. The homicide occurred January 6, 1933. For approximately three years prior thereto, the appellant, about thirty-two years of age, had been received in the Salamoni home as a friend of the family. So far as the evidence shows, appellant had not taken the daughters out, but had met them at parties and elsewhere. The daughters worked for Liggett & Myers Tobacco Company, and on one occasion, Thursday before the homicide, appellant came there and had a brief conversation with Lillian. Appellant's statement of the case states that "some of the evidence might justify an inference that the mutual admiration between Lillian and appellant was a little more than usual. However, Lillian kept company with other young men and was engaged to be married. This was known to defendant and he did not resent it, nor did he make complaint, so far as the evidence shows." Lillian had received a proposal of marriage in July, 1932, and told appellant to keep away. On January 6, 1933, when the mother and daughters came home from work, the husband was in the house and Joe was out playing. About five or five-ten o'clock P. M., of that day appellant came to the Salamoni home. The mother and father told appellant that his attentions to Lillian were becoming known and, by reason of his being a married man, were causing undesirable comment among her friends. They told him to leave and not come back. The mother testified that appellant left, stating, "I never was rejected from no house. This is the first house I have ever been rejected out of." So far as shown no argument or heated words ever passed between appellant and any member of the Salamoni family. The two girls, Angeline and Lillian, went to the basement of the home. Appellant returned in about ten minutes, came to the basement window, and knocked on it, saying: "Open the window." Lillian complied with the request and appellant (quoting from appellant's statement) said: " 'I have come to say goodbye,' and then shot her in the left side of the neck at the base of the thyroid. When he fired the first shot at Lillian he immediately went into the kitchen. Both girls ran up the steps to the kitchen. When they entered the kitchen the defendant was standing by the ice box near the door, with his pistol in his hand. Sam Salamoni, the father, was lying on the floor near the door, dead, and Joe Salamoni, the brother of Lillian, was lying on the floor near a table

apparently dead. Lillian sat down in a chair by the ice box and about a foot from the defendant. The defendant then drew his pistol and shot her again and she fell from the chair dead. He then turned his pistol on Angeline and tried to shoot her, but for some reason the pistol failed to fire; then he pointed the pistol at Mrs. Salamoni and tried to shoot her, but again it failed to fire. The defendant then left the room and went to the police station, gave information of the tragedy and surrendered himself into the custody of the law." The boy, Joe, died two days later.

Appellant's signed statement reads:

"I, Paul Barbata, of lawful age, in order that the full truth may be known, make the following free and voluntary statement, without threat or punishment, or promise of immunity or reward, being informed that what I may herein say may be used as evidence against me, if the prosecuting officers should so desire.

"About 5:10 this P. M., I was visiting the home of Sam Salamoni, at 2317 Cooper Street. Sam Salamoni, the father, and Lucille Salamoni, the mother, were in the kitchen, and they began accusing me of disgracing their family by talking to their daughters, Lill and Angeline, and that the girls' future happiness was gone, and that everybody on the 'hill' was talking about it, and that I was the cause of it.

"I then went home where I got my blue steel, 32 caliber automatic pistol and returned to the Salamoni home at 2317 Cooper Street. I went through the side entrance on the south side of the house; the two girls were washing clothes in the basement. The basement window was open. I knelt down and fired a shot through the basement window and I think I hit Lill in the shoulder. I then went around the rear of the house and entered the kitchen door. I shot the father and I shot the boy, Joe. Lill had come from the basement and was sitting on a chair leaning against the ice box; Angeline was hollering, 'don't Paul don't,' and I then went over and fired another shot into Lill's body.

"After the shooting I ran out the front way. The gun jammed on me, but I intended to kill the whole family and myself. I ran north on Cooper Street after leaving the house and threw the gun away, and ran to the Mounted District where I gave myself up.

"I have read the foregoing statement consisting of one page and it is true in its entirety. I have signed this page and have been given an opportunity to make any corrections or additions I saw fit to make."

Upon arraignment, appellant entered a plea of not guilty. The appellant offered no evidence on the main issue, and such evidence as was offered in his behalf was on the issue of his sanity. A number of lay witnesses, after qualifying as to their knowledge of appellant

and appellant's actions, and two medical experts, testified that, in their opinion, appellant was insane.

In rebuttal, the State adduced testimony to the effect appellant was sane. Other facts, in so far as material to specific issues, will be set forth in the opinion.

I. In view of the contentions presented, we determine first whether or not defendant was entitled, under the facts, to an instruction on murder in the second degree. The trial court gave such an instruction. The uncontradicted evidence shows that appellant killed the deceased with a deadly weapon, and (if sane) willfully, deliberately and premeditatedly. There is an entire absence of evidence on the issue of any lawful or just provocation. [State v. Kotovsky, 74 Mo. 247, 1. c. 251.] Appellant offered evidence only on the issue of his sanity. Under its sworn duty to try the case under the evidence and the law, the uncontroverted facts precluded the jury from bringing in a verdict other than that the appellant was guilty of murder in the first degree, or was to be held not responsible for his act by reason of his insanity. It has been uniformly held that where the only submissible issue made is murder in the first degree an instruction on murder in the second degree is not justified. Among the cases so holding, tried on the theory of a willful, deliberate and premeditated killing, are: State v. Nasello, 325 Mo. 442, 1. c. 459, 30 S. W. (2d) 132 (stating that such has been the ruling of this court for a period of fifty years); State v. Adams, 323 Mo. 729, 1. c. 741, 19 S. W. (2d) 671 (a banc case); State v. Paulsgrove, 203 Mo. 193, 1. c. 206, 101 S. W. 27, stating 1. c. 204: "They (the jury) were bound either to find the defendant guilty of murder in the first degree, or acquit him on the ground that by reason of his insanity he was not responsible for his act in killing the deceased;" State v. Tettaton, 159 Mo. 354, 60 S. W. 743, stating 1. c. 379: "The killing was either murder in the first degree or nothing, and it would have been error for the court to have instructed upon any other degree of homicide;" State v. Holloway, 156 Mo. 222, 56 S. W. 734, stating, 1. c. 231: "No half way house exists in a case of this sort, between murder in the first, and any minor degree of that crime. Defendant, if sane, 'could coolly deliberate said murder;' if insane, he could neither deliberate nor premeditate . . .;" State v. Bobbst, 269 Mo. 214, 1. c. 224, 190 S. W. 257; State v. Lewis, 273 Mo. 518, 1. c. 532, 201 S. W. 80. As the submissible issues govern the law applicable to a case, we hold an instruction on murder in the second degree (although given) was not within the issues made; and the review of the instant case will be so restricted.

II. Appellant attacks Instruction No. 1 for the reason that it improperly defines "deliberately" in that it uses the words "lawful" and "just" in connection with the word "provocation." ·

The trial court instructed: " 'Deliberately' means done in a cool state of the blood. It does not mean brooded over or reflected upon for a week, a day or an hour, but it means an intent to kill, executed by the defendant in furtherance of a formed design to gratify a feeling of revenge, or to accomplish some other unlawful purpose, and not under the influence of a violent passion, suddenly aroused by some lawful or just cause or provocation."

Appellant stresses the case of State v. Warren, 326 Mo. 843, 33 S. W. (2d) 130. The defenses in the Warren case were insanity and self-defense (326 Mo. l. c. 849) ; and, the evidence justifying an instruction on murder in the second degree (l. c. 851), the court gave instructions on first and second degree murder (l. c. 855). That case was reversed on grounds other than for error in the definition of "deliberation," as the court found the use made of the words "just provocation" had been invited by defendant. However, DAVIS, C., states (326 Mo. l. c. 856): "In defining deliberation, we do not think that the words 'just' or 'lawful' should be used in connection with provocation where the evidence develops several degrees of homicide, or other than first degree murder. The words 'lawful' and 'just' convey to the jury that they must find that defendant deliberately killed, unless the acts of the deceased rendered the killing justifiable or excusable homicide, for 'just' and 'lawful' denote justification and excuse. [See State v. Wilson, 98 Mo. 440, l. c. 448, 11 S. W. 985.]" The words "where the evidence develops several degrees of homicide, or other than first degree murder" expressly exclude the application of the remarks to cases where the only submissible issue is first degree murder. State v. Wilson, 98 Mo. 440, l. c. 451, 11 S. W. 985; State v. Malone, 327 Mo. 1217, 39 S. W. (2d) 786, l. c. 787, and State v. Sharpe, 326 Mo. 1063, 34 S. W. (2d) 75, l. c. 78 (cited by appellant), likewise involved facts justifying instructions on different degrees of homicide and are likewise distinguishable from the instant case. That portion of the instruction criticized in the Sharpe case (to-wit: "or to accomplish some other unlawful act") was held harmless in State v. Hershon, 329 Mo. 469, l. c. 490, 495, 45 S. W. (2d) 60, because more favorable to the defendant than the law required.

Instructions similar to the one at issue have been approved in cases where the only submissible issue was first degree murder. We quote State v. Bobbst, 269 Mo. 214, l. c. 225, 190 S. W. 257: "The court defined the word 'deliberately' as 'done in a cool state of the blood, not in a sudden passion engendered by lawful or some just cause of provocation' and further instructed the jury that there was no evidence tending to show such passion or provocation. This

identical form of instruction was in the case of State v. Ellis, 74 Mo. 207, l. c. 220, stated as the correct form to be given where there is no evidence of such sudden passion or provocation. There was no evidence of this kind in the case at bar. To the same effect are State v. Donnelly, 130 Mo. 642, l. c. 647; State v. Taylor, 171 Mo. 465, l. c. 477, and State v. David, 131 Mo. 380, l. c. 395.'' This ruling is specifically approved in Ex parte Burgess, 309 Mo. 397, l. c. 404, 274 S. W. 423, and State v. Hershon, 329 Mo. 469, l. c. 494, 45 S. W. (2d) 60 (reviewing the definition of ''deliberately''). [See, also, State v. Ellis, 74 Mo. 207, l. c. 220, 221; State v. Jackson, 167 Mo. 291, l. c. 297, 66 S. W. 938; State v. Tettaton, 159 Mo. 354, l. c. 377, 60 S. W. 743.] There was no reversible error in the instruction under the submissible issues of the instant case.

■ III. Instruction No. 3 (the general form of instruction used where insanity is interposed as the sole defense in a criminal case), in so far as material, reads:

First is the paragraph informing the jury insanity is interposed as a defense.

Next, the paragraph stating the law recognizes such defense.

Next, the paragraph beginning ''Insanity is a physical disease.'' Then follows:

''Wherefore, the court instructs the jury that if they believe and find from the evidence that, at the time he did the killing charged in the indictment, the defendant was so perverted and deranged, in one or more of his mental and moral faculties, as to be incapable of understanding, at the moment he killed Lillian Salamoni, that such killing was wrong and that he, the defendant, at that time, was incapable of understanding that this act of killing was a violation of the laws of God and society, if the jury find that he was so insane, they should find him not guilty.''

Next, the paragraph on partial and general insanity.

Next, the paragraph on ''distinguishing between right and wrong.'' Then follows:

''The law presumes every person who has reached the years of discretion to be of sound mind, and this presumption continues until the contrary is shown. So that when, as in this case, insanity is pleaded as a defense to a criminal charge, the fact of the existence of such insanity at the time of the commission of the act complained of, must, before you can acquit on that ground, be established by the evidence to your reasonable satisfaction, and the burden of proving this fact rests with the defendant.''

Next, the paragraph that insanity need not be established by positive and direct proof. Then follows:

''The law presumes the defendant innocent, and the burden of proving him guilty rests with the State, and, before you should con-

vict him, his guilt must be established beyond a reasonable doubt. On the other hand, to entitle the defendant to a verdict of not guilty by reason of his insanity, the law requires him to prove it, not, however, beyond a reasonable doubt, but only to your reasonable satisfaction.

"From all this, it follows that although you may believe and find that the defendant did the killing alleged, yet, if, from the evidence, you further find that, at the time he did it, he was in such an insane condition of mind that he did not know he was doing wrong, and did not comprehend the nature and character of the act, then such killing was not in law malicious or felonious, and you ought to acquit him on the ground of insanity, and, by your verdict, so say."

Appellant's motion for new trial alleges the instruction is erroneous "for the reason that it fails to instruct the jury properly as to the law applicable to defenses of insanity; it invades the province of the jury; it assumes the existence of facts placed in issue by the defendant's plea of not guilty; it is misleading, confusing and ambiguous to the jury when read in connection with the other instructions given to the jury by the court; it assumes that the defendant killed Lillian Salamoni, thereby invading the province of the jury and assuming the existence of facts placed in issue by defendant's plea of not guilty; by the use of the phrase, 'at the time he did the killing charged in the indictment,' and 'that the defendant did the killing alleged,' in said Instruction No. 3, the jury were told that defendant, if he was not insane, was guilty of murder in the first degree, since the indictment charged him with murder in the first degree only, and the use of the said phrases rendered said Instruction No. 3 particularly erroneous, since in Instruction No. 1 the court instructed the jury upon murder in the first degree and upon murder in the second degree."

(a) As to appellant's complaint that the instruction assumes and tells the jury appellant, if sane, is guilty of murder in the first degree, completely disregarding the instruction given by the court on murder in the second degree, we have held the case presents no submissible issue of murder in the second degree. It follows that the cases of State v. Warren, 326 Mo. 842, 33 S. W. (2d) 125; and State v. Jordan, 306 Mo. 3, 268 S. W. 64, involving submissible issue of degrees of homicide in addition to first degree murder, are not controlling here; and this complaint, based upon a submissible issue of murder in the second degree, is without merit.

(b) Appellant contends the instruction assumes defendant committed the crime charged.

At the close of the evidence in the trial court the submissible issues, including the defenses, are made. In the instant case these issues are narrow. The sole defense was insanity. The plea of in-

sanity on behalf of a defendant has been repeatedly held by this court to be in the nature of a plea of confession and avoidance.

SHERWOOD, J., in State v. Pagels, 92 Mo. 300, l. c. 309, 4 S. W. 931, said: ''Indeed, the plea of insanity is itself, and of necessity, a plea in the nature of a plea of confession and avoidance, the courts differing as to the *quantum* of evidence to sustain such a plea. [1 Whart. Crim. Law (9 Ed.), sec. 61.] Such plea is but a bare denial of a *part of* the government's case; it admits the *act* charged, but avers that there was no criminal intent accompanying the act, and, therefore, denies the *crime* charged. [2 Bish. Crim. Proc. (3 Ed.), sec. 669.] This being the case, it is wholly immaterial to discuss the point whether testimony as to Kohn's dying declarations was properly received in evidence, since those declarations only went to an admitted fact, to-wit, the homicide.''

The same judge, in State v. Soper, 148 Mo. 217, l. c. 239, 49 S. W. 1007, further said: ''Under the theory upon which this case was tried, the single issue joined between the State and the defendant was, as above said, *insanus vel non;* such a defense, the joining of such an issue, is tantamount to a plea of confession and avoidance; the homicide is confessed, but the guilt, the crime of that homicide denied, and this is all that is denied; for it stands to reason that on no other ground would the plea of insanity have any pertinence or relevance in it. [State v. Pagels, 92 Mo. 300; State v. Welsor. 117 Mo. 570.]'' Among other cases to like effect are: State v. Wright, 134 Mo. 404, l. c. 418, 35 S. W. 1145; State v. Lewis, 136 Mo. 84, l. c. 93, 37 S. W. 806; State v. Stubblefield. 157 Mo. 360, l. c. 364, 58 S. W. 337; State v. Holloway, 156 Mo. 222, l. c. 230, 56 S. W. 734.

Upholding a like instruction against the attack that it assumes the defendant did the killing and that such error was not cured by also instructing on the presumption of innocence until guilt be proven beyond a reasonable doubt, this court in State v. Holloway, 156 Mo. 222, l. c. 230, 56 S. W. 734, said:

''The instruction in telling the jury that defendant did the killing only did what defendant had already done by his plea of insanity; confessed the doing of the act itself, then endeavored to avoid, and denied the guilt of it. [State v. Pagels, 92 Mo. 300, l. c. 309; State v. Welsor, 117 Mo. 570; State v. Soper, 148 Mo. l. c. 239.] The assumption that defendant did the killing, therefore, did defendant no harm, and was not at all inconsistent with another instruction which told the jury they must find defendant guilty beyond a reasonable doubt. Guilty, but not of the physical act of killing, but of the crime of murder, if sanity existed.'' [Note: The word ''insanity'' appearing in 156 Mo. l. c. 231, 4th line, upon reference to the original opinion is found to be ''sanity,'' the quotation being corrected here.]

"An instruction is not erroneous which assumes as true the fact which is admitted on the trial. [State v. Holloway, 156 Mo. 222; State v. Edwards, 71 Mo. 312.]" [State v. Miller, 190 Mo. 449, l. c. 461, 89 S. W. 377.]

State v. Bobbst, 269 Mo. 213, l. c. 224, 190 S. W. 257, states: "We do not find merit in appellant's contention that the court committed reversible error because some of the instructions given on the defense of insanity assume that the defendant killed his wife. That defendant did kill his wife cannot be said to be a really controvertible issue under the facts here disclosed. And although, technically speaking, it was probably bad form to assume such fact in said instructions, yet it cannot be said, in view of the strong, uncontradicted evidence of such killing, that the rights of appellant were in any manner prejudiced thereby."

Appellant cites, in support of his contentions, State v. Warren 326 Mo. 842. 33 S. W. (2d) 125; State v. Hersh, 296 S. W. 433; State v. Meininger. 306 Mo. 675. 268 S. W. 71; State v. Jordan, 306 Mo. 3, 268 S. W. 64; State v. Mills, 272 Mo. 526, 199 S. W. 131, and State v. Burns. 268 S. W. 79. Having heretofore determined no submissible issue of murder in the second degree exists in the instant case, we limit this discussion to the particular assignment under consideration. In the Warren case, 326 Mo. 1. c. 851, 852, 33 S. W. (2d) 125, the court had before it a similar instruction containing the phrases: "At the time he committed the act charged in the indictment" and "at the moment he killed John C. Deskin as charged against him," etc. In criticizing the instruction, the court said: "Defendant did not take the stand nor testify, nor did he judicially admit that he shot and killed Deskin. It is true that the testimony of some of his witnesses tended to show that he did shoot and kill Deskin. It is also true that he submitted the defense of insanity. Notwithstanding these circumstances, all of the instructions predicating a verdict should have required a finding that defendant shot and killed Deskin (State v. Jordan. 306 Mo. 3. 268 S. W. 64), although, in view of the evidence, we do not deem it necessary to hold the instruction erroneous on that ground." Note well, the Warren case expressly refrains from disapproving State v. Duestrow, 137 Mo. 44, stating: "It is said that this instruction was approved in State v. Duestrow, 137 Mo. 44, 38 S. W. 554, 39 S. W. 266, but a reading of that case advises that the instructions are not identical and the words *as charged against him* are not found in the Duestrow case instruction." And again, with reference to the phrase *"committed the crime as charged:"* "This instruction also follows the form set forth in State v. Duestrow, 137 Mo. 44, 38 S. W. 554, 39 S. W. 226. In the Duestrow case, however, the verdicts were predicated on first degree murder or acquittal only." That the phrases must be read in the light of their context is evident, for in the Duestrow case

(137 Mo. l. c. 69, 70, 71, 72, 73) the following phrases, among others, occur: "At the time he did the killing charged in the indictment;" "at the time of the commission of the homicide charged;" "defendant did the killing alleged;" "at the time of the commission of the homicide charged;" "at the time of the killing of his wife;" "that he had no capacity to distinguish right from wrong, as to the act with which he is charged;" "at the time of the commission of the crime charged;" "when he committed the homicide;" "that the defendant, at the time of the homicide." The Warren case in criticizing the instruction, in so far as it can be said to relate to this issue, cites the Jordan, Meininger and Mills cases, supra. As we read the Jordan (306 Mo. l. c. 22), Meininger (306 Mo. l. c. 690), Mills (272 Mo. l. c. 534) and also the Burns (268 S. W. l. c. 80) cases, they involved flight instructions to the effect that flight of a defendant is a circumstance to be taken into consideration in connection with all the other facts in evidence, and if the jury find and believe from the evidence that the defendant, *"after the commission of the crime alleged in the indictment, fled.* . . ." They properly held such instructions erroneous as in each instance the crime was denied and the instruction assumed as true the main controverted fact. An instruction on flight assuming the commission of the offense charged, where defendant denies its commission, is materially different and readily distinguishable from an instruction assuming an act established by the uncontradicted evidence and, of necessity, confessed by the very plea the defendant interposes. The submissible issues in the Warren case embraced self-defense and insanity and murder in the second degree as well as murder in the first degree: and the phrases were held erroneous because they told the jury the defendant, if guilty, was guilty of murder in the first degree, thus directing the jury to set aside and ignore the evidence and instructions on a lesser degree of felonious homicide. We interpret the comment in the Warren case (in accord with the cases therein cited) to go no further than to state the rule that it is error for an instruction to assume as true a controverted fact; for, had the court adjudicated the instant issue, some, at least, of the earlier decisions involving only first degree murder and the sole defense of insanity would have been mentioned and overruled. Thus understood, said comment does not rule a case wherein the sole defense is insanity and the only crime, if any, murder in the first degree; and a reading of the Duestrow case in the light of the comment in the Warren case fortifies this conclusion. The Hersh case (296 S. W. l. c. 436) involved the usual instruction telling the jury that what defendant says against himself the "law presumes to be true," etc., although the evidence tended to show the defendant denied making any admissions. The instruction was considered erroneous as assuming the controverted fact that defendant made a confession. These cases

are clearly distinguishable from the instant case in that in each instance the defendant denied the fact assumed as uncontradicted; whereas, in the instant case, the sole plea of insanity, of necessity confesses the act, and, under the only relevant purpose of the plea, appellant (by reason of his insanity) seeks to be held not legally responsible for the act.

That portion of the last paragraph of Instruction No. 3, viz.: "That the defendant did the killing alleged," when viewed in the light of its context, assumes no fact but tells the jury that even though they may find defendant did the killing nevertheless they should acquit if they further find he was insane at the time.

Instruction No. 3 told the jury that "before you should convict him (defendant), his guilt must be established beyond a reasonable doubt," and the court gave the usual instructions on presumption of innocence, reasonable doubt, etc.

The instruction in question is practically a literal copy of similar instructions in State v. Pagels, 92 Mo. 300, l. c. 314, 315, 316, 4 S. W. 931, decided in 1887, and State v. Schaefer, 116 Mo. 96, l. c. 109, 111, 22 S. W. 447, decided in 1893. The Schaefer case, 116 Mo. l. c. 112, 22 S. W. 447, states: "The foregoing charge in every essential particular, when the defense was insanity, has been approved and followed by this court since the case of Baldwin v. State, 12 Mo. 223." The Baldwin case was decided in 1848. The instruction has been sanctioned by use, tested by the learning of eminent jurists, and withstood attacks, including such as are now under consideration, for many decades. Although the instruction might be couched in more appropriate terms as regards the assignment now under consideration, we conclude that the phrases in question, when viewed in the light of their context, in so far as any fact is assumed thereby, go no further than to assume the act confessed by the plea of insanity and established in this case by the uncontradicted testimony of eyewitnesses, and the rights of the appellant were not prejudiced thereby.

■ (c) Appellant in his brief also complains of the instruction on the ground it unlawfully places the burden of proving appellant's insanity upon the defendant, ignoring the fact that while the burden of offering evidence may shift during a criminal trial, the burden of proof rests upon the State throughout the entire trial, and cites State v. Malone, 327 Mo. 1217, 39 S. W. (2d) 786; State v. Hardelein, 169 Mo. 579, 70 S. W. 130; State v. Wingo, 66 Mo. 181; State v. Schaefer, 116 Mo. l. c. 96, 22 S. W. 447; and State v. Hickman, 95 Mo. 322, 8 S. W. 252.

We have carefully read appellant's motion for new trial, the whole thereof with reference to this instruction being hereinbefore set forth, and fail to find incorporated therein any reference to this assignment. The trial court was not called upon to review its ac-

tion in this respect, and under Section 3735, Revised Statutes 1929, requiring that the specific grounds or causes for new trial must be set forth in detail and with particularity, we disregard the complaint made only in appellant's brief. [State v. Harlow, 327 Mo. 231, l. c. 237, 37 S. W. (2d) 419, l. c. 421; State v. Nichols, 327 Mo. 1237, l. c. 1242, 39 S. W. (2d) 777, 779; State v. Gillman, 329 Mo. 306, l. c. 313, 314, 44 S. W. (2d) 146, l. c. 149.] Such has been the ruling under Section 3735 on analogous issues in other first degree murder cases before this court. [See State v. Carroll, 333 Mo. 558, l. c. 564, 62 S. W. (2d) 863, l. c. 867; State v. Copeland, 335 Mo. 140, 71 S. W. (2d) 746, l. c. 750 (1-3); State v. Goodwin, 333 Mo. 168, l. c. 169, 61 S. W. (2d) 960 (1, 2).]

IV. Instruction No. 4 reads:

"If you find that the defendant actually committed the act charged against him, and if you further find him not guilty on the ground that he was insane at the time of the commission thereof, you will so state in your verdict, and you will also state whether the defendant has entirely and permanently recovered from such insanity.

"On the question of the sanity or insanity of the defendant, you will consider all the evidence offered in the case, the act itself, if you find it was committed, and the attending circumstances, the life, the habits and conduct of the defendant, as well as his mental capacity or perverseness, if any, from his birth up to the present time, to determine whether or not the defendant was of sound or unsound mind at the time of the commission of the offense charged, if you find it was committed. If you find he was insane and irresponsible from any disease or disorder of mind, as explained in these instructions, when he committed the act, if he did commit it, then you will find him not guilty. But, if you find that he did commit the act and at the time of the commission thereof he was not insane, but responsible for his act, as explained in these instructions, then you will find him guilty, even though you may find that he has become insane since the commission of the act charged, or that he is now insane."

Appellant, in his motion for new trial, states this instruction is erroneous "for the reason that it fails to instruct the jury properly as to the law applicable to defenses of insanity; it invades the province of the jury; it assumes the existence of facts placed in issue by the defendant's plea of not guilty; it is misleading, confusing and ambiguous to the jury when read in connection with the other instructions given to the jury by the court; by the use of the phrases 'that the defendant actually committed the act charged against him,' and 'at the time of the commission of the offense charged,' in said Instruction No. 4, the jury were told that defendant, if he was not

insane, was guilty of murder in the first degree, since the indictment charged him with murder in the first degree only, and the use of the said phrases rendered said Instruction No. 4 particularly erroneous, since in Instruction No. 1 the court instructed the jury upon murder in the first degree and upon murder in the second degree.''

(a) As we read this assignment, in so far as it treats of error in detail and with particularity, it is founded upon a submissible issue of murder in the second degree being lodged in the case. This subject matter has been discussed under points I and III, subdivision a. In passing, reference may be also had to point III, subdivision b, for the assumption of any controverted fact. We adhere to the rulings heretofore made.

(b) Appellant in his brief also alleges the instruction is erroneous in that it details portions of the evidence which it directs the jury to consider on the issues of defendant's insanity, but dwarfs the importance of other essential parts of the evidence on that issue by omitting any mention thereof. Appellant's assignment in his motion for new trial nowhere sets forth in detail and with particularity wherein the instruction is erroneous upon this ground assigned in the brief, and the trial court had no such issue before it. Our observations under point III, subdivision c, are applicable here; and we disregard the assignment.

V. Appellant contends (briefly) that the record is devoid of any substantial evidence of his sanity at the time of the commission of the offense.

Appellant's evidence, adduced from a number of lay witnesses and two medical experts, was amply sufficient to support a verdict of not guilty by reason of insanity. However, the State adduced evidence from the officer taking appellant's statement soon after the homicide that he was of the opinion appellant was sane at the time. Another officer, who had known appellant for sometime and had occasion to see and talk to him quite frequently, testified that, in his opinion, appellant was sane. A friend of the deceased testified that when she told appellant he ought to ''lay off the young girls,'' appellant replied that until she absolutely shunned him, he would do as he did in the past. One of appellant's witnesses, who had known appellant since he was a ''kid,'' testified, on cross-examination, he had seen appellant around the ''hill'' and that appellant appeared normal to him. Other facts were in evidence as to appellant's actions. Some of these might have indicated to the jury appellant was hard to control, or that he had a high temper, rather than that he was of unsound mind. Had appellant possessed a strong, well-balanced mind, he likely would have controlled his passions; but we cannot say that the court should have taken the

case from the jury and directed a verdict of acquittal. Not every weak mind is to find a refuge from criminal responsibility through a plea of insanity. Only that mentality which is so defective as to prevent the actor, at the time of the commission of the criminal act, from comprehending the nature and character of the act and from knowing he is doing wrong relieves from responsibility in law. Here, the uncontradicted evidence is that the defendant committed the homicide. His signed statement corroborates the facts as detailed by eyewitnesses. It appears to be a rational narrative of the events. We think the evidence presented an issue on appellant's sanity which the court was required to submit to the jury, and the weight and value of that evidence was for the jury. [See, among others, State v. Barker, 216 Mo. 532, l. c. 542 et seq., 115 S. W. 1102; State v. Caviness, 326 Mo. 992, 33 S. W. (2d) 940, l. c. 943; State v. Tarwater, 293 Mo. 273, l. c. 296, 239 S. W. 480. And, *arguendo,* State v. Morris, 263 Mo. 339, l. c. 354, 172 S. W. 603.] In passing, we find nothing in the case to sustain any contention that the jury was swayed by passion or prejudice unless it be the penalty imposed. The appellant went to the home of the deceased and committed the homicide. Under such circumstances the punishment has been held not excessive. [State v. Long, 253 S. W. 729, l. c. 733; State v. Carroll, 333 Mo. 558, l. c. 568, 62 S. W. (2d) 863, l. c. 868; State v. Copeland, 335 Mo. 140, 71 S. W. (2d) 746, l. c. 752.] The transcript discloses that the court not only sustained appellant's objection to certain remarks of the State's attorney at the close of the State's rebuttal, but went farther and instructed the jury to disregard them. Nothing further occurred. Under such circumstances appellant may not successfully predicate prejudicial error on the occurrence. [State v. Painter, 329 Mo. 314, l. c. 322, 44 S. W. (2d) 79; State v. Baublits, 324 Mo. 1199, l. c. 1210, 27 S. W. (2d) 16.]

The foregoing disposes of the assignments presented in appellant's brief.

VI. Other issues in appellant's motion for new trial:
The motion assigns as error the refusal of the court to permit two witnesses for the State, Lucille Salamoni and Angeline Salamoni Russo (mother and sister of the deceased, respectively) to give their opinion while on the stand for the State in chief, on cross-examination, as to defendant's sanity. The exclusion of the testimony was not accompanied by an offer of proof and the assignment is not before us (State v. Carey, 313 Mo. 436, l. c. 448, 282 S. W. 22, l. c. 25; State v. Walker (Mo.), 14 S. W. (2d) 441, l. c. 443; State v. Blakely (Mo.), 24 S. W. (2d) 1020, l. c. 1023); as there is an entire absence of any sufficient basis upon which to adjudge prejudicial error (State v. Roberts, 280 Mo. 669, l. c. 679, 217 S. W. 988, l. c. 991). At the time the question was asked, appellant's

plea stood "not guilty." It was only after appellant adduced evidence that the plea of not guilty by reason of insanity was disclosed. Under the circumstances, the admissibility of such evidence during the State's case in chief has been held to be within the discretion of the trial court. [State v. Lewis, 136 Mo. 84, 1. c. 91, 37 S. W. 806.]

█ The motion for new trial questions the admissibility of evidence on appellant's sanity by Officer Forthaus. We fail to find any objection, exception or request to strike this particular testimony in the record. It is not before this court for review. [See State v. Wana, 245 Mo. 558, 1. c. 562, 150 S. W. 1065.] It is well settled that a lay witness, giving his opinion that a party is insane, must detail the facts upon which the opinion is based; but if he expresses the opinion that the party is sane, he is not required to detail the facts. This rule is said to rest upon the obvious reason that an opinion a person is insane is based upon abnormal and unnatural acts and conduct; whereas, an opinion that he is sane is based upon the absence of such acts or conduct. [State v. Liolios, 285 Mo. 1, 1. c. 13, 225 S. W. 941, and cases cited; Kaechelen v. Barringer (Mo.), 19 S. W. (2d) 1033, 1. c. 1037 (8), and cases cited.]

Proof of the *corpus delicti* and venue "in the city of St. Louis and State of Missouri," were properly and sufficiently made.

The verdict of the jury—"We the jury in the above entitled cause, find the defendant guilty of murder in the first degree, as by the indictment he stands charged; and assess the punishment at death, Frank S. Winter, Foreman—" is sufficient. [State v. Jackson (Mo.), 253 S. W. 734, 1. c. 737; State v. Adams, 316 Mo. 157, 1. c. 164, 289 S. W. 948; State v. Baublits, 324 Mo. 1199, 1. c. 1207, 27 S. W. (2d) 16; State v. Long (Mo.), 253 S. W. 729, 1. c. 733.]

█ Assignments in the motion for new trial to the effect (1) that the verdict is against the weight of the evidence (State v. Maness (Mo.), 19 S. W. (2d) 628, 1. c. 629; State v. Francis, 330 Mo. 1205, 1. c. 1209, 52 S. W. (2d) 552, 1. c. 554; State v. Goodwin, 333 Mo. 168, 1. c. 169, 61 S. W. (2d) 960; State v. Carroll, 333 Mo. 558, 1. c. 564, 62 S. W. (2d) 863, 1. c. 867; State v. Vigus (Mo.), 66 S. W. (2d) 855, 1. c. 856; State v. Copeland, 335 Mo. 140, 71 S. W. (2d) 746, 1. c. 750; State v. Higginbotham, 335 Mo. 102, 72 S. W. (2d) 65, 1. c. 70; State v. Early (Mo. App.), 49 S. W. (2d) 1060); (2) that the jury failed to follow and be guided by the instructions of the court (the Francis, Goodwin, Carroll, Vigus and Copeland cases, supra); (3) that the verdict of the jury was the result of bias, passion and prejudice on the part of the jury (the Maness, Copeland and Higginbotham cases, supra); (4) that the verdict of the jury is contrary to the instructions of the court, and is in violation of both the law and the facts in the case (see cases under (1) and (2), supra); as well as assignments against a given

instruction to the effect (5) that it fails to instruct the jury properly as to the law applicable to defenses of insanity (State v. Maness, supra; State v. Gillman, 329 Mo. 306, l. c. 314, 44 S. W. (2d) 146); (6) that it is misleading, confusing and ambiguous to the jury when read in connection with the other instructions given to the jury by the court (State v. Copeland, supra; State v. Sinovich, 329 Mo. 909, l. c. 916, 46 S. W. (2d) 877, l. c. 880); (7) that it invades the province of the jury; and (8) that it assumes the existence of facts placed in issue by the defendant's plea of not guilty, being general and not setting forth in detail and with particularity the specific grounds or causes of the alleged error, are insufficient to preserve anything for review.

The record proper shows the indictment to be sufficient in substance and in approved form; an arraignment, a plea of not guilty, the presence of the appellant, the impaneling and swearing of the jury, the trial upon the indictment, the return of the verdict, the filing and overruling of the motion for new trial, the according of allocution, judgment and sentence in accord with the verdict, and the allowance of an appeal, all regular and sufficient.

It follows the judgment should be and is affirmed; and that the punishment imposed by the jury and the sentence pronounced by the trial court upon the verdict be carried into effect. *Cooley* and *Westhues*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.